**Reynaldo Vincoy VILLARINA,
Petitioner,**

v.

**IMMIGRATION & NATURALIZATION
SERVICE, Respondent.**

No. 92–70468.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 17, 1993.

Decided March 9, 1994.

William May, San Francisco, California,
for the petitioner.

* Honorable Leonard I. Garth, United States Circuit Judge, Third Circuit Court of Appeals, sitting

Donald E. Keener, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Before: WALLACE, Chief Judge,
GARTH * and WIGGINS, Circuit Judges.

WALLACE, Chief Judge:

Villarina petitions for review of the Board of Immigration Appeals' (Board) dismissal of his appeal from the immigration judge's decision. The immigration judge ordered him deported and denied his application for suspension of deportation under section 244(a) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1254(a), and his request for voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e). The Board had jurisdiction pursuant to 8 C.F.R. §§ 3.1(b)(2), 242.21 (1993). We have jurisdiction over this timely petition pursuant to 8 U.S.C. § 1105(a) and section 245A(f) of the Act, 8 U.S.C. § 1255a(f). We deny the petition.

I

Villarina is a native and citizen of the Philippines. He entered the United States as a lawful permanent resident in 1980, as the unmarried child of a United States citizen. On October 24, 1985, he petitioned for naturalization. While investigating his eligibility for naturalization, the United States consul in Manila discovered that Villarina was married in 1977. Villarina's marriage rendered him ineligible for an immigrant visa as the unmarried child of a United States citizen at the time of his entry into the United States.

On July 10, 1987, the Immigration and Naturalization Service (INS) issued Villarina an order to show cause, charging him with deportability under section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), and section 212(a)(14), 8 U.S.C. § 1182(a)(14), as an alien who entered the United States with the intent and purpose of performing labor without

by designation.

authorization or labor certification and under section 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1), and section 212(a)(20), 8 U.S.C. § 1182(a)(20), as an alien who entered the United States as an intended immigrant without valid immigration documents. An immigration judge denied Villarina's request for suspension of deportation and denied his application for voluntary departure. The immigration judge ordered Villarina deported to the Philippines.

## II

The merits of the Board's dismissal and validity of the deportation order are not before us. Rather, Villarina asks us to permit him to file an application for relief from deportation under the Immigration Reform and Control Act of 1986 (Reform Act), section 245A of the Act, 8 U.S.C. § 1255a. The Reform Act established a scheme to permit certain aliens unlawfully present in the United States to apply for the status of temporary resident and, after a one-year period, for permission to reside permanently.

To qualify as an "alien lawfully admitted for temporary residence," an alien must establish (1) a timely application, (2) continuous unlawful residency since 1982, (3) continuous physical presence since November 6, 1986, and (4) admissibility as an immigrant. § 201 of Reform Act, 8 U.S.C. § 1255a(a)(1)–(4). An application is timely if filed within the twelve-month period designated by the INS, which began on May 5, 1987. 8 U.S.C. § 1255(a)(1). The issue before us is whether Villarina has established the first requirement.

Villarina concedes that he failed to file an application within the required one year. He contends that under the circumstances of this case, his failure to file should be excused.

He points out that the second requirement is based upon a continuous unlawful status. That is, he must establish "that he entered the United States before January 1, 1982, and that he has resided continuously in the United States in an *unlawful status* since such date and through the date the application is filed under this subsection." 8 U.S.C. § 1255a(a)(2)(A) (emphasis added).

In exercising its jurisdiction to interpret section 245a of the Reform Act, the Legalization Appeals Unit initially determined that aliens remain in "lawful status" until a final order of deportability issues in deportation proceedings. *See Matter of Urena,* File A90235087 (March 14, 1988); *Matter of Hilbert,* File A90283028 (July 11, 1988). In *Matter of S.,* 19 I. & N. Dec. 851, 853 (1988), the Legalization Appeals Unit reversed its position on the final deportation order requirement, and reopened sua sponte previous denials of section 245a relief which had been based on determinations of "lawful status." *Id.* at 854.

Villarina contends the INS's former interpretation of "unlawful status" rendered him statutorily ineligible for legalization at that time. He argues he "could reasonably believe that filing an application would be a futile and expensive act," relying on *Ayuda, Inc. v. Meese,* 687 F.Supp. 650, 665 (D.D.C. 1988), *vacated,* 7 F.3d 246 (D.C.Cir.1993) (intervening appellate history omitted). In *Ayuda,* the court granted a preliminary injunction against enforcement of an INS regulation, reasoning that there was a threat of irreparable injury to plaintiffs because of a sizable application fee that deterred them from filing an application for legalization in the face of the INS's erroneous interpretation of regulations which would have rendered them ineligible for relief under the Reform Act. *Id.* Villarina asks us to extend the filing deadline to enable him to file for relief under the Reform Act, relying on *Perales v. Thornburgh,* 967 F.2d 798 (2d Cir. 1992), *vacated,* ⸻ U.S. ⸻, 113 S.Ct. 3027, 125 L.Ed.2d 716 (1993).

In *Reno v. Catholic Social Services,* ⸻ U.S. ⸻, ⸻, 113 S.Ct. 2485, 2496, 125 L.Ed.2d 38 (1993) (*Catholic Social Services*), the Supreme Court held that claims of class members who failed to file a legalization application based on an expectancy the INS would deny their claims were not ripe for judicial review. Class members in two separate actions challenged the INS's interpretation of the Reform Act. Both suits consisted of class members who knew of the INS's regulation, concluded they were ineligible for legalization, and did not file an application

because of the INS's interpretation of the Reform Act. *Id.* at ——, ——, 113 S.Ct. at 2491, 2492.

The Court cautioned that the ripeness doctrine limits the presumption of judicial review which exists under the Administrative Procedure Act for one "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Id.* at ——, 113 S.Ct. at 2495 (internal citation and quotation omitted). Courts are "reluctant to apply [injunctive and declaratory judgment remedies] to administrative determinations unless ... the effects of the administrative action challenged have been felt in a concrete way by the challenging parties." *Id.* (internal citation and quotation omitted).

The Court held that the challenged INS regulations failed to produce the concrete effects necessary for the dispute to be ripe for adjudication. *Id.* at ——, 113 S.Ct. at 2496. The challenged regulations did not impose any penalties for violating newly imposed restrictions. *Id.* Instead, the regulations only limited access to a benefit created but not automatically bestowed by the Reform Act. *Id.*

The Court explained that the class members' claims would ripen by taking the affirmative steps possible before the INS blocked the claim by applying the regulation. *Id.* A barrier would arise, for instance, if the INS concluded the regulation rendered the applicant ineligible and formally denied the application. *Id.* at ——, 113 S.Ct. at 2497; *Ayuda, Inc. v. Reno,* 7 F.3d 246, 249 (D.C.Cir. 1993) (interpreting *Catholic Social Services* as requiring an application and subsequent denial before a claim ripens).

The Supreme Court pointed out a possible exception: "front-desking" may also produce the concrete effects necessary for a claim to be ripe. *Id.* —— U.S. at ——, 113 S.Ct. at 2498. "Front-desking" refers to an INS agent's refusal to accept an application for filing because the officer believes the application is invalid on its face. In a footnote, the Court also observed "[a]lthough we think it unlikely, we cannot rule out the possibility that further facts would allow class members who were not front-desked to demonstrate

that the front-desking policy was nevertheless a substantial cause of their failure not to apply, so that they can be said to have had the 'advanced parole' or 'facially valid document' regulation applied to them in a sufficiently concrete manner to satisfy ripeness concerns." *Id.* at ——, 113 S.Ct. at 2500 n. 28.

We hold that Villarina's claim lacks the ripeness required for judicial review. Villarina, like the class members in *Catholic Social Services,* contends he never filed an application for legalization because he thought he was ineligible for relief based on INS's interpretation of the Reform Act. He failed to take the affirmative steps for legalization that were indisputedly possible: filing an application and paying the required fee. Standing, under these circumstances, would require Villarina at least to file an application and pay the appropriate fee.

While *Catholic Social Services* indicates that a claim may be ripe if the INS had refused to accept the claim for filing, Villarina conceded at oral argument that the INS did not "front-desk" his claim. Because the record does not demonstrate, and Villarina does not allege, that any front-desking policy was a "substantial cause" of his failure to apply, we need not decide whether a front-desking policy that was a substantial cause of an alien's failure to apply would produce the requisite ripeness, as *Catholic Social Services* left open in dictum.

As Villarina's claim is not ripe for adjudication, we lack jurisdiction over this claim.

PETITION DENIED.